**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**SOUTH CENTRAL REGIONAL**
**MEDICAL CENTER**                                                                 **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO. 2:12cv103-KS-MTP**

**PRESS GANEY ASSOCIATES, INC.**                                         **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on the Defendant Press Ganey Associates, Inc.'s

Motion to Dismiss or, in the Alternative, to Stay the Case [6].  Having considered the

motion, the response and the applicable law, the Court finds that the motion is not well

taken and should be denied.

<u>**I.  BACKGROUND**</u>

Plaintiff South Central Regional Medical Center ("South Central") is a "community

hospital", as defined by Mississippi law,[1] located in Jones County, Mississippi.

Defendant Press Ganey Associates, Inc. ("Press Ganey") is a corporation formed in

Indiana with its principal place of business in South Bend, Indiana.  On or about March

30, 2010, South Central and Press Ganey entered into a Performance Improvement

---

[1] Generally, a Mississippi community hospital is a health care facility owned by a
county or municipality and operated by a board of trustees appointed by the county or
municipality.  Specifically, "community hospital" means "any hospital, nursing home
and/or related health facilities or programs, including without limitation, ambulatory
surgical facilities, intermediate care facilities, after-hours clinics, home health agencies
and rehabilitation facilities, established and acquired by boards of trustees or by one or
more owners which is governed, operated and maintained by a board of trustees."
Miss. Code Ann. § 41-13-10(c).

Master Services Agreement (the "Agreement")[2] with an effective date of July 1, 2010. Pursuant to the Agreement, Press Ganey was to collect certain information from South Central's patients regarding their hospital experiences and to report the information to the Centers for Medicare and Medicaid Services ("CMS").  The patient information was to be obtained through Hospital Consumer Assessment of Healthcare Providers and Systems ("HCAHPS") surveys.  The HCAHPS survey was implemented by CMS to facilitate the reporting and comparison of patients' experiences in hospitals throughout the United States.[3]  The HCAHPS survey asks discharged patients twenty-seven (27) questions, covering such topics as communication with hospital staff and hospital cleanliness.[4]

Certain hospitals, such as South Central, receive Medicare payments for operating costs associated with inpatient hospital services based on prospectively set rates.  *See* 42 C.F.R. § 412.1.  Under this system, hospitals are paid on a per discharge basis generally determined by the diagnoses assigned to each patient.  *See* 42 C.F.R. §§ 412.2, 412.60, 412.62.  CMS refers to this payment system as the inpatient prospective payment system ("IPPS").[5]  Since July of 2007, hospitals subject to the

---

[2] (*See* Doc. No. [12-1].)

[3] *See* http://www.cms.gov/Medicare/Quality-Initiatives-Patient-Assessment-Instruments/HospitalQualityInits/HospitalHCAHPS.html.

[4] *See id.*

[5] *See* http://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/index.html.

IPPS must collect and report HCAHPS data in order to obtain their full IPPS annual payment updates.[6]  Hospitals failing to submit such data may have their annual payments reduced by 2.0 percentage points.[7]

On May 21, 2012, South Central filed suit against Press Ganey in the Circuit Court of the Second Judicial District of Jones County, Mississippi, asserting claims of breach of contract and indemnification.  (*See* Compl. [1-3 at ECF p. 3].)  South Central claims that the Agreement [12-1] required Press Ganey to start conducting HCAHPS surveys on July 1, 2010, but that Press Ganey did not begin conducting the surveys until October of 2010.  (*See* Compl. [1-3] at ¶ 7.)  South Central alleges that it received notice from CMS indicating that its 2012 fiscal year IPPS market basket[8] update would be reduced by two percent (2%) as a result of Press Ganey's failure to submit HCAHPS survey data to CMS from July 1 through September 30, 2010.  (*See* Compl. [1-3] at ¶ 10.)  South Central purportedly appealed this rate reduction by filing a Request for Reconsideration, which was denied by CMS.  (*See* Compl. [1-3] at ¶ 11.)  It is further alleged that Press Ganey's breach of contract "has caused South Central to receive a substantial reduction in funds it would otherwise receive from CMS . . . ."[9]  (*See* Compl.

---

[6] *See* http://www.cms.gov/Medicare/Quality-Initiatives-Patient-Assessment-Instruments/HospitalQualityInits/HospitalHCAHPS.html.

[7] *See id.*

[8] The "[m]arket basket index is CMS's projection of the annual percentage increase in hospital inpatient operating costs."  42 C.F.R. § 413.40(a)(3).

[9] Counsel for South Central indicated that its loss was estimated to be $466,737.00, in a pre-suit letter to Press Ganey's chief executive officer.  (*See* Doc. No. [1-2] at p. 2.)

[1-3] at ¶ 14.)  South Central seeks an award against Press Ganey to compensate for

the funds it should have received but for Press Ganey's alleged breach of the

Agreement, as well as damages for Press Ganey's alleged failure to defend, indemnify

and hold South Central harmless from its losses arising out of the alleged breach.  (*See*

Compl. [1-3] at ¶¶ 15, 19.)

On June 18, 2012, Press Ganey removed the proceeding to this Court on the

basis of diversity of citizenship jurisdiction under Title 28 U.S.C. § 1332.  (*See* Notice of

Removal [1].)  On July 11, 2012, Press Ganey filed its Motion to Dismiss or, in the

Alternative, to Stay the Case [6].  Press Ganey seeks dismissal under Rule 12(b)(1) and

(6) of the Federal Rules of Civil Procedure.  Alternatively, Press Ganey seeks a stay of

proceedings under the doctrine of primary jurisdiction.  The Motion [6] has been fully

briefed and the Court is ready to rule.

## II.  DISCUSSION

### A.    Legal Standards

"The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to

dismiss."  *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011)

(citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).  The dismissal

"motion should be granted only 'if it appears certain that the plaintiff cannot prove a

plausible set of facts that establish subject-matter jurisdiction.'"  *Davis v. United States*,

597 F.3d 646, 649 (5th Cir. 2009) (quoting *Castro v. United States*, 560 F.3d 381, 386

(5th Cir. 2009)).  The court is to accept the facts and allegations set forth in the

complaint as true; although, the court is authorized to consider and resolve disputed fact

issues for jurisdictional purposes.  *See Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710,

714 (5th Cir. 2012) (citations omitted).  Accordingly, subject matter jurisdiction may be

found lacking on the basis of "(1) the complaint alone; (2) the complaint supplemented

by undisputed facts evidenced in the record; or (3) the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts."  *Id.*

   To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.

Ed. 2d 929 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.*; *see also In re Great Lakes Dredge & Dock Co.

LLC*, 624 F.3d 201, 210 (5th Cir. 2010) ("To be plausible, the complaint's '[f]actual

allegations must be enough to raise a right to relief above the speculative level.'")

(quoting *Twombly*, 550 U.S. at 555).  A complaint containing mere "labels and

conclusions, or a formulaic recitation of the elements" is insufficient.  *Bowlby v. City of

Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012) (citation and internal quotation marks

omitted).  Although courts are to accept all well-pleaded facts as true and view those

facts in the light most favorable to the nonmoving party, courts are not required "to

accept as true a legal conclusion couched as factual allegation."  *Randall D. Wolcott,

M.D., P.A.*, 635 F.3d at 763.  Ultimately, the court's task "is to determine whether the

plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the

plaintiff's likelihood of success."  *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (citing

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)),

*cert. denied*, 133 S. Ct. 192 (2012).

**B.    Analysis**

Press Ganey's request for dismissal under Rule 12(b)(1) and (6) is based on the contention that South Central cannot proceed on its claims in this Court because it has failed to exhaust administrative remedies relating to the Medicare reimbursement reduction allegedly caused by Press Ganey's breach of contract.  Press Ganey's alternative request for a stay of proceedings is based on the argument that the Court should defer to the jurisdiction of the Secretary of Health and Human Services until a final administrative decision is reached as to the Medicare reimbursement reduction issue.  For the reasons stated below, the Court rejects Press Ganey's primary and alternative requests for relief.

**1.    Exhaustion of Administrative Remedies**

Medicare, established in Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, provides health insurance for the aged and disabled and is administered by CMS, a division of the Department of Health and Human Services ("HHS").  *See RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 556 (5th Cir. 2004). Part A of the Medicare Act, 42 U.S.C. § 1395c *et seq.*, provides insurance for the costs of hospital and related services.  *See Heckler v. Ringer*, 466 U.S. 602, 605, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984).  A hospital dissatisfied with the amount of a Medicare Part A reimbursement under the IPPS may obtain a hearing before a Provider Reimbursement Review Board ("Board"), whose members are appointed by the Secretary of HHS.  *See* 42 U.S.C. § 1395*oo*(a), (h).  The Secretary, on his own motion, may reverse, affirm, or modify the Board's decision with respect to a reimbursement

determination.  *See* 42 U.S.C. § 1395*oo*(f)(1).  A hospital has the right to obtain judicial

review of the Board or Secretary's decision "by a civil action commenced within 60 days

of the date on which notice of any final decision by the Board or of any reversal,

affirmance, or modification by the Secretary is received."  *Id.*

      Title 42 U.S.C. § 405(h) of the Social Security Act, made applicable to the

Medicare Act by 42 U.S.C. § 1395ii, provides:

> The findings and decision of the . . . [Secretary[10]] after a hearing shall be
> binding upon all individuals who were parties to such hearing. No findings of
> fact or decision of the  . . . [Secretary] shall be reviewed by any person,
> tribunal, or governmental agency except as herein provided. No action
> against the United States, the  . . . [Secretary], or any officer or employee
> thereof shall be brought under section 1331 or 1346 of Title 28 to recover on
> any claim arising under this subchapter.

42 U.S.C. § 405(h).  The purpose of the first two sentences of § 405(h) is to "assure that

administrative exhaustion will be required."  *Weinberger v. Salfi*, 422 U.S. 749, 757, 95

S. Ct. 2457, 45 L. Ed. 2d 522 (1975).  The third sentence of § 405(h) "strips the federal

courts of jurisdiction under 28 U.S.C. §§ 1331 and 1346 for any claims arising under the

Medicare Act . . . ."  *Randall D. Wolcott, M.D., P.A.*, 635 F.3d at 765.

      Press Ganey argues that this action is barred by § 405(h) because South Central

has failed to exhaust the administrative review process provided under § 1395*oo* and

related federal regulations.  South Central raises two principal arguments in response:

1) that § 405(h)'s jurisdictional bar only applies to actions, unlike this one, "against 'the

United States, the Secretary, or any officer or employee thereof[;]'" and 2) that this

---

[10] The statute refers to the "Commissioner of Social Security", but § 1395ii indicates
that this reference should be construed as the Secretary or HHS in applying § 405(h)
under the Medicare Act.  42 U.S.C. § 1395ii.

action does not arise under the Medicare Act, thus rendering the Act's administrative exhaustion provisions inapplicable.  (*See* Pl.'s Resp. [12] at p. 2.)  South Central's first argument is not availing.  Several courts have found § 405(h)'s exhaustion requirement applicable in suits brought against private parties.[11]  Although some of the private party defendants in those suits had contracts with CMS relating to the administration of Medicare benefits, no defendant was "the United States, the Secretary, or any officer or employee thereof."  Thus, this Court finds the private entity status of the Defendant Press Ganey, in and of itself, not to be outcome determinative for purposes of § 405(h).  Instead, the controlling issue is whether any claim asserted by South Central "arises under the [Medicare] Act . . . ."  *Heckler*, 466 U.S. at 615 (internal quotation marks omitted).[12]

---

[11] *See, e.g.*, *Bentley v. The Wellpoint Cos.*, No. 11 Civ. 8963, 2012 WL 546991, at *1, 6  (S.D.N.Y. Feb. 17, 2012); *Acquisto v. Secure Horizons by United HealthCare Ins. Co.*, No. 2:08cv847, 2011 WL 6780870, at *1, 6  (M.D. Fla. Dec. 27, 2011), *aff'd in part*, 2013 WL 272758 (11th Cir. 2013); *Kaye v. Humana Ins. Co.*, No. 08-80819-CIV, 2009 WL 455438, *8-9 (S.D. Fla. Feb. 23, 2009).

[12] South Central also suggests that § 405(h) is inapplicable because § 1332 provides the basis for jurisdiction here, while the third sentence of § 405(h) only refers to §§ 1331 and 1346.  (*See* Pl.'s Resp. [12] at p. 7 n.12.)  The Courts of Appeals for the Third, Seventh and Eighth Circuits have rejected similar contentions.  *See Nichole Med. Equip. & Supply, Inc. v. Tricenturion, Inc.*, 694 F.3d 340, 346-47 (3d Cir. 2012); *Midland Psych. Assocs., Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 488-89 (7th Cir. 1990).  Upon its original enactment, § 405(h) bared virtually all grants of federal jurisdiction, including diversity jurisdiction.  *Bodimetric Health Servs., Inc.*, 903 F.2d at 488.  Congress made technical, non-substantive corrections to the statute in 1976, resulting in its current wording.  *Nichole Med. Equip. & Supply, Inc.*, 694 F.3d at 346.  Consequently, "the current version of § 405(h) bars diversity actions just the same as the original version did."  *Midland Psych. Assocs., Inc.*, 145 F.3d at 1004.  In the absence of any Supreme Court or Fifth Circuit opinion addressing this issue, the Court is persuaded by the reasoning of the preceding authorities.

"A claim arises under the Medicare Act if 'both the standing and the substantive basis for the presentation' of the claim is the Medicare Act, . . . or if the claim is 'inextricably intertwined' with a claim for Medicare benefits . . . ." *RenCare, Ltd.*, 395 F.3d at 557 (quoting *Heckler*, 466 U.S. at 606, 623).  In *RenCare, Ltd.*, the Fifth Circuit reversed the district court's administrative exhaustion-based dismissal of a medical provider's claims against a health management organization relating to reimbursement for renal dialysis services.  *Id.* at 556-57.  All of the provider's claims, including breach of contract, were based on Texas state law.  *Id.* at 557.  Therefore, "the standing and substantive basis for its claims [wa]s clearly not the Medicare Act."  *Id.*  The claims were also not "inextricably intertwined" with a claim for Medicare benefits because i) there were no Medicare enrollees seeking benefits; ii) the government had no financial interest in the outcome of the litigation; and iii) the dispute was "based on the parties' privately-agreed-to payment plan."  *Id.* at 558.  At bottom, the provider's claims were "for payment pursuant to a contract between private parties."  *Id.* at 559.

The Court finds *RenCare, Ltd.* to control the outcome of Press Ganey's request for dismissal.  State common law, as opposed to the Medicare Act, provides the standing and substantive basis for South Central's breach of contract and indemnification claims.[13]  No Medicare enrollees seek benefits in this cause.  Further, the federal government has no financial interest in this dispute since South Central

---

[13] *Cf. Ardary v. Aetna Health Plans of Cal., Inc.*, 98 F.3d 496, 499-500 (9th Cir. 1996) (determining that state law claims for wrongful death did not arise under the Medicare Act); *Delco, Inc. v. Corp. Mgmt., Inc.*, No. 2:11CV90, 2012 WL 3154969, at *3-4 (S.D. Miss. Aug. 2, 2012) (same as to various state law tort claims); *FAC, Inc. v. Cooperativa de Seguros de Vida*, 106 F. Supp. 2d 244, 251 (D.P.R. 2000) (same where RICO, not the Medicare Act, governed the plaintiff's claims).

seeks damages from Press Ganey, a private party.[14]  This Court cannot say that South

Central's "claims are inextricably intertwined with a claim for Medicare benefits" under

these circumstances.  *RenCare, Ltd.*, 395 F.3d at 557-58.

Press Ganey's attempt to distinguish *RenCare, Ltd.* from this dispute is not well

taken.  First, Press Ganey asserts that Medicare Part C, as opposed to Part A, was at

issue in *RenCare, Ltd.* and that under Part C no government funds were at issue.

*RenCare, Ltd.*, 395 F.3d at 558-59 ("Under Part C, however, CMS pays M+C

organizations fixed monthly payments in advance, regardless of the value of the

services actually provided to the M+C beneficiaries. . . .  In return, the M+C organization

assumes responsibility and full financial risk for providing and arranging healthcare

services for M+C beneficiaries.").  Here, the federal government's interest is purportedly

affected because South Central is seeking reimbursement for Medicare Part A

payments "that the Secretary of Health and Human Services will withhold based on the

failure to report HCAHPS data in a timely manner."  (Def.'s Reply Mem. [15] at p. 7.)

Although the measure of damages for breach of contract in this case is tied to the

amount of the subject Medicare Part A reimbursement, the Court fails to discern how

---

[14] *Cf. United States ex rel. Body v. Blue Cross & Blue Shield of Ala., Inc.*, 156 F.3d
1098, 1104 (11th Cir. 1998) ("Actions . . . which do not seek payment from the
government and could not be brought under section 405, are therefore not barred by
subsection 405(h)."); *Delco, Inc.*, 2012 WL 3154969, at *4 (finding that the "inextricably
intertwined" test was not met where neither the government nor any Medicare enrollee
had a financial interest in the dispute); *Main & Assocs., Inc. v. Blue Cross & Blue Shield
of Ala.*, 776 F. Supp. 2d 1270, 1280 (M.D. Ala. 2011) (same where "no government
funds are at risk whatever the outcome of the litigation may be"); *State of Fla., Office of
the Attorney Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d
1288, 1298 (S.D. Fla. 2005) (refusing to dismiss complaint based on exhaustion of
medicare remedies since suit did not seek payment from the government).

the federal government has any resulting interest.  If South Central is successful on its claims, damages for breach of contract and indemnification will be paid by Press Ganey, not the government.  The government is not a party to this action and Press Ganey cites no federal statute or regulation (or presents any governmental contract), placing federal funds at risk in the event of a monetary judgment in favor of South Central.

Second, Press Ganey posits that there was no administrative appeal process under which the plaintiff in *RenCare, Ltd.* could assert its claims and seek relief for its losses.  Here, South Central can allegedly "be made whole" through the administrative procedures applicable to providers contesting the amount of Medicare Part A reimbursement payments.  (Def.'s Reply Mem. [15] at p. 7.)  As an initial matter, the Court has not been apprised of any federal administrative process under which South Central may assert its common law claims against a private party such as Press Ganey.  Moreover, South Central's potential damages in this case are not limited to the amount of the Medicare Part A reimbursement allegedly withheld because of Press Ganey's failure to conduct HCAHPS surveys.  South Central also seeks damages "for Press Ganey's failure to defend, indemnify and hold South Central harmless from and against South Central's [l]osses arising out of Press Ganey's failure to collect and submit the HCAHPS data to CMS . . . ."  (Compl. [1-3] at ¶ 19.)  Such damages could include the costs and expenses incurred by South Central in its administrative appeal of the subject Medicare reimbursement.  (*See* Compl. [1-3] at ¶ 11.)  No showing has been made "that the administrative review process attendant to Part" A extends to a claim for

indemnification against a private party for expenses incurred during that process. *RenCare, Ltd.*, 395 F.3d at 559.[15]

South Central is not asking this Court to review the propriety of any decision of the Secretary of HHS. Furthermore, South Central's claims against Press Ganey do not arise under the Medicare Act. At bottom, this suit is about an alleged breach of contract by a private party and dismissal is unwarranted pursuant to § 405(h).

### 2.    Primary Jurisdiction

The Supreme Court has provided the following description of the doctrine of primary jurisdiction:

> The doctrine . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

---

[15] The Court finds South Central's indemnification claim to survive Rule 12(b)(6) scrutiny. Under the terms of the Agreement, which is incorporated by reference into the Complaint, it is plausible that Press Ganey would be required to indemnify South Central for any "costs or expenses (including reasonable attorneys' fees)" incurred in any administrative proceedings as a result of Press Ganey's failure to report HCAHPS data. (*See* Complaint [1-3] at ¶¶ 11, 17, 19; Agreement [12-1] at ¶ 7.) Press Ganey's reliance on the Mississippi Supreme Court's decision in *Hopton Building Maintenance, Inc. v. United Parcel Service, Inc.*, 559 So. 2d 1012 (Miss. 1990), in support of dismissal does not change this result. In *Hopton*, the court held that an indemnification provision limited by the terms "imposed by law" did not extend to attorney's fees and costs incurred in the successful defense of a slip and fall lawsuit. 559 So. 2d at 1013-14. The *Hopton* indemnification provision adopted the common law requirement of legal liability being imposed prior to any right of indemnity. *Id.* The indemnification provision before this Court is not so limited. As explained in *Hopton*, "[t]he parties may, of course, broaden the responsibility for indemnity by the language of their contract" beyond the common law. *Id.* at 1014.

*Local Union No. 189, Amalgamated Meat Cutters, & Butcher Workmen of N. Am., AFL-CIO v. Jewel Tea Co.*, 381 U.S. 676, 684-85, 85 S. Ct. 1596, 14 L. Ed. 2d 640 (1965) (quoting *United States v. W. Pac. R. Co.*, 352 U.S. 59, 63-64, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956)).  The doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties."  *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303, 96 S. Ct. 1978, 48 L. Ed. 2d 643 (1976) (citation omitted).  It is particularly applicable where the subject issue involves technical fact questions uniquely within the scope of an administrative agency's experience and expertise.  *Id.* at 304.  However, "primary jurisdiction is not a doctrine of futility; it does not require resort to an expensive and merely delaying administrative proceeding when the case must eventually be decided on a controlling legal issue wholly unrelated to [agency] determinations . . . ."  *Jewel Tea Co.*, 381 U.S. at 686.

The Fifth Circuit has found that the doctrine of primary jurisdiction applies when:

(1) the court has original jurisdiction over the claim before it; (2) the adjudication of that claim requires the resolution of predicate issues or the making of preliminary findings; and (3) the legislature has established a regulatory scheme whereby it has committed the resolution of those issues or the making of those findings to an administrative body.

*Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 69 F.3d 1304, 1311 (5th Cir. 1995) (citation omitted).  The Fifth Circuit has also recognized that "[n]o fixed formula exists for applying the doctrine[;]" but, "agency referral is favored when (a) it will promote even-handed treatment and uniformity in a highly regulated area, or when sporadic action by federal courts would disrupt an agency's delicate regulatory scheme; or (b) the agency possesses expertise in a specialized area with which the courts are relatively unfamiliar."  *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 811 (5th Cir. 2011)

-13-

(citations omitted).  Primary jurisdiction "is a flexible doctrine to be applied at the discretion of the district court."  *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir. 1988) (citing *El Paso Natural Gas Co. v. Sun Oil Co.*, 708 F.2d 1011, 1020 (5th Cir. 1983); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 418 (5th Cir. 1976)).

Press Ganey asserts that under the "doctrine of primary jurisdiction, the court must suspend all proceedings pending South Central's exhaustion of the administrative remedies afforded by the Social Security Act and the Secretary's Medicare Part A hearing regulations."  (Def.'s Mem. of Law [7] at p. 14.)  The Court disagrees and exercises its discretion to deny a stay of proceedings in this cause.  The gravamen of this suit is South Central's breach of contract claim for damages against a private party. With all due respect to the Secretary of HHS, the resolution of such a claim is well within the experience and expertise of this Court.[16]  Questions regarding the existence of a valid agreement between South Central and Press Ganey, and Press Ganey's alleged breach of the agreement "do not require the resolution of predicate factual issues within

---

[16] *Cf. Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir. 1996) (affirming the district court's refusal to defer to the jurisdiction of the New York Public Service Commission ("PSC") because "issues of contract interpretation . . . are neither beyond the conventional expertise of judges nor within the special competence of the PSC"); *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 668 (Fed. Cl. 2003) (providing that "[t]he question of money damages resulting from a breach of contract falls squarely within this court's jurisdiction" in finding the doctrine of primary jurisdiction inapplicable); *Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va., Inc.*, 759 F. Supp. 2d 772, 788 (E.D. Va. 2011) (refusing to stay proceedings in an action that, at its core, was a contract dispute); *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 494 F. Supp. 2d 401, 415 (M.D. La. 2007) (denying motion to dismiss contract claims in favor of the jurisdiction of the Louisiana Public Service Commission ("LPSC")).

the . . . [Secretary's] special expertise." *Occidental Chem. Corp.*, 494 F. Supp. 2d at 415 (citing *Northwinds Abatement, Inc.*, 69 F.3d at 1311).

Although the measure of damages for Press Ganey's alleged breach of contract is tied to the amount of the Medicare Part A reimbursement withheld by CMS, the Court determines that "the benefits of obtaining the agency's aid [as to this particular issue do not] outweigh the need to resolve the litigation expeditiously." *Gulf States Utils. Co. v. Ala. Power Co.*, 824 F.2d 1465, 1473 (5th Cir. 1987). The well-pleaded allegations of the Complaint assert that "Press Ganey's breach *has caused* South Central to receive a substantial reduction in funds it would otherwise receive from CMS under the Medicare Market Basket Update . . . ." (Complaint [1-3] at ¶ 14) (emphasis added). To the extent Press Ganey contests this damage claim, nothing prevents it from asserting a failure to mitigate damages defense based on South Central's alleged failure to exhaust administrative remedies.[17] Furthermore, this Court may revisit the issue of primary jurisdiction as the litigation proceeds and the issue of damages is or is not clarified. *See Gulf States Utils. Co.*, 824 F.2d at 1474 ("As the litigation proceeds and GSU's theories become clearer, the district court may find that the FERC has exclusive or primary jurisdiction over some of GSU's claims.").

Finally, Press Ganey's reliance on a 1999 opinion from the United States Bankruptcy Court for the Northern District of Mississippi in support of a stay of

---

[17] "Although Plaintiff's failure to exhaust her administrative remedies does not bar her constitutional due process claim, . . . this failure may be used as evidence at trial of Plaintiff's failure to mitigate her damages." *Rogan v. Lewis*, 975 F. Supp. 956, 966 n.14 (S.D. Tex. 1997); *see also Simon v. Mfrs. Hanover Trust Co.*, 849 F. Supp. 880, 884 (S.D.N.Y. 1994) (striking failure to exhaust administrative remedies affirmative defense as redundant of failure to mitigate damages defense).

proceedings is misplaced.  (*See* Def.'s Mem. of Law [7] at p. 17) (citing *In re Mid-Delta Health Sys., Inc.*, 251 B.R. 811 (Bankr. N.D. Miss. 1999)).  In that case, the court was essentially being asked to determine the amount plaintiff health care providers were required to repay the federal government as the result of an overpayment made through the Medicare program.  *In re Mid-Delta Health Sys., Inc.*, 251 B.R. at 813.  Plaintiffs were not alleging breach of contract against a private party and the complaint was "inextricably intertwined" with a claim for Medicare benefits.  *Id.* at 812-13, 814.  As detailed above, the federal government has no financial interest in this private breach of contract action and South Central's claims do not arise under the Medicare Act.

## III.  CONCLUSION

For the foregoing reasons:

IT IS ORDERED AND ADJUDGED that Press Ganey's Motion to Dismiss or, in the Alternative, to Stay the Case [6] is denied.  In addition, counsel for the parties are to contact the chambers of the United States Magistrate Judge Michael T. Parker within seven (7) days of the entry of this Order to schedule a case management conference.

SO ORDERED AND ADJUDGED this the 12th day of February, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE